24-1428 Shumate v. City of Lynchburg, Mr. Strelka. Strelka, yes. Good morning. Good morning. Good morning, Judge Diaz, Judge Niemeyer, and Judge Maddox. May it please the court, I am Thomas Strelka, Tommy Strelka. I represent the appellant, Mary Shumate, a firefighter in this action that was originally brought under Title VII in a state law, the Fraud and Abuse Witness Protection Act. The, I'll talk, there's two kind of general sections of issues here. One of them is the sovereign immunity issue as it relates to the state law claim, which I'll cover first, and then the other issues relate to the factual issues that were weighed on summary judgment when the case was dismissed in the Lynchburg District Court. So as it relates to the sovereign immunity, the court ruled on a 12b-6 at the very beginning of the case that the defendant's fire chief, Gregory Wormser, and the city manager, Mr. Binda, were inappropriate defendants, that the, that sovereign immunity applied, that the Eleventh Amendment applied, and also because the plaintiff had filed this state Fraud and Abuse Whistleblower Protection Act claim in federal court as opposed to state court that, again, sovereign immunity applied. I think that's the whole rub. In other words, the state may have waived it, but to be in federal court, the Supreme Court has made, I don't know how more explicit you can make it, but the Supreme Court has says the state has to waive it explicitly in federal court. And I didn't see anywhere where the state, I mean, the statute basically has to say it, and an attorney general can't waive it. They have a case, there's a lot of cases on this. So my question is, where does the state waive federal jurisdiction? Right. Well, Your Honor. They did waive it for state court, and you can file it in state court. Right. Anytime. Right. The, thank you, Your Honor. As it relates to the waiver, I'll agree with the court and I guess the appellee that the typical exact language that we see in precedent related to these waivers of sovereign immunity is not in that statute. There is a policy statement at the beginning of the statute that says it applies to the commonwealth and to the political subdivisions of the commonwealth, but it does not, the language of saying, you know, this is an explicit waiver of sovereign immunity is not in the law. No, no, not sovereign immunity. You're missing my point. Sorry. In federal court. In other words, the 11th Amendment is, they're immune from being sued in federal court. Right. And the question is, is there any place that they explicitly say we will be suable in federal court? And that's what the Supreme Court has required. No, Your Honor. That is, that is not in the statute. It is, it is not explicitly, explicitly in there, but the statute is clearly written purely for the gamut. How are we going to get over that whole principle that you, whether you have immunity or not is another issue. That's for state court law. Right. Right. And the other question is whether you have 11th Amendment immunity in the federal court. The states, you know, the Supreme Court has indicated the states can choose to be sued in the federal courts or not. Correct. And, and it has to be explicit if they're going to be, and, okay, I, I, you answered my question. Sure. Well, I'll move on then, Your Honor, to the factual issue. I just want to be sure I understand what, what your position is here. I mean, do you agree that there was a waiver of sovereign immunity in the, in this whistleblower, whistleblower case? No, Your Honor. No, I think I misheard Judge Niemeyer on his previous question, I think, when I was addressing it earlier. The, there, there is in, in the statute itself, in the policy statement, it indicates that the gamut of this law, the, the identified defendants are political subdivisions of the Commonwealth and the Commonwealth. The law itself doesn't explicitly say sovereign immunity is waived in the law, but it does say that this was the purpose of the law. The, there's, this is a law also that has very little, no precedent, has no precedent from any of the state courts related to its interpretation, so we're stuck with what the statute says. And what the statute says is that it's a law for the political subdivisions of the Commonwealth, including municipalities, which is what the case is about. The individual defendants were listed because the statute has its own definitions of what an employer is. And under its definition of employer, it says an employer means a person who supervises one or more employees, a supervisor of that supervisor, or an agent of the governmental agency. And these were the individuals that were highlighted in, in, as the individual defendants under this act. Right. And so those are the individuals who the state seems to be suggesting are no longer immune, right? Correct. Okay. So back to Judge Niemeyer's question, if this case had been brought in state court, there's no question that the suit could have been, could have continued? It would have had been, yes, it would have had been split into two separate actions. It would have had the federal matter and then the state court matter. Okay. And so are you conceding then that simply because the, the lawsuit was brought in federal court, the result is different? I would argue that if, on summary judgment, if the original fraud and abuse whistleblower protection, that claim had been, had been maintained, that the analysis would have been different because of the protected activity. So I'm just asking whether or not the fact that, that the lawsuit originated in federal court somehow now gives these federal employees, who the state has indicated should not be immune, immunity? Oh, well, they're not federal employees. They're just municipal. I'm sorry, state. Yeah. It's okay. You spoke. Yeah. There's not been, again, it is in federal court and that does seem to be the rub. There's been no precedent that says that individual defendants such as these that match the definition of employer.  What I'm asking is whether or not the 11th Amendment immunity has anything to do with a case involving municipal employees. We argue that it doesn't. Okay. We argue that it only applies to the state and that the defendant, excuse me, the appellee, excuse me, the court cited Sossamon, which was a case regarding the state of Texas and the 11th Amendment and found that to be determinative. But this is a municipality. It is not, it is not a state. It is not the Commonwealth of Virginia. Your Honor, the, I want to, if it's all right, I'm going to move to the, may I move to the summary judgment issues in this matter as the factual issues. The factual issues in this case, the court granted summary judgment despite clear material.  Before you do that, so what do you, what do you contend our opinion should say about this first issue, the sovereign immunity issue? That 11th Amendment doesn't apply and that the court should have, it should be reversed and remanded to allow the prosecution of this claim moving forward against the individual defendants. Well, and I know you're going to get to the Title VII issues that the district court dismissed, and I know you disagree with that, but assuming we were to affirm on that, do you, why wouldn't the district court then be able to decide whether or not to even consider that sovereign immunity claim anew or simply just kick it back to the state, to state court? I mean, I suppose that, that could be, that could be the path it goes, Your Honor. I mean, I see what you're saying. The, you know, it's, it's. Because there's no longer any jurisdictional hook in federal court, right? Correct. And I know you have a different view about the Title VII claims, and I don't want to, I know you're anxious, you're chomping at the bit to get there, but this, this first issue is a little bit, frankly, it's got me a little bit confused because I, you know, the Title, the 11th Amendment just doesn't seem to have anything to do with this case.  And yet the district court conceded. I mean, the district court first decided it's clear that there's no, that the state or this, the statute waives immunity for these employees and yet kicked the case out of court because they were in federal court. Correct. You agree that that wasn't right? Correct. Correct, Your Honor. Okay. We said error to that. All right.  So go ahead. The, as it relates to the evidence that the court weighed on summary judgment, a key factor related to declarations and a particular declaration that had been signed by a captain, Captain Brown. The, this occurred after a protected activity in June of 2021 and then was later repeated in August of 2021. Appellee contests whether or not defendant, excuse me, whether appellant actually complained of gender discrimination in her protected activities. I would cite in the record 222, 252, 253, and 256. And these are sites to her testimony in which she described the discrimination of which she complained. The, after making these protected acts of hostile work environment and gender discrimination, she was then subsequently placed under investigation by the fire officials for allegedly having discussed something that generated offense and a complaint about her to her supervisors. According to the declaration that Captain Brown signed, the, Mary's comments about a coworker offended some of her subordinates. She indicated in the affidavit that these individuals had complained. Yet when we deposed her, they did not complain and they never said that it was not directly to Captain Brown, the individuals that, that she referred to. What Mary Shoemate had done was engage step-by-step with the city's EEO policy. The discussion that was at issue was whether a coworker's sexuality might be an issue for other coworkers, whether it offended some of the coworkers. There was an equal opportunity policy. She inquired, it's her job. She was in a supervisory capacity. These were subordinate employees. She asked them, are you offended? They all stay together. It's a firehouse. They sleep. They dress. They change. Are you offended by being with this worker because of his sexuality? It was a good faith question that she asked in line with their own policy. And it was this question, when they were asked, according to Captain Brown in her declaration, which he was directed to sign by the fire chief, that this offended them. And this offense led to her, Mary Shoemate, creating a harassing or discriminatory environment when that is what she reported to the chairman. Did you say the policy required her to make that inquiry of the individual coworkers? She was working step-by-step in the policy. I think that having a good faith concern that the policy might be violated, a supervisor is empowered to inquire and take additional steps with the subordinate employees. How can she make sure that the policy is being followed? Which triggered her inquiry? I believe there was some, and I don't have the site to the record, I apologize. But she had, I think, heard some discussion, water cooler chat and so forth, that there was a disfavor among the men related to one particular coworker, and the issue was his sexuality. So she took it and addressed it head on, and because she inquired, this is what they said was harassing, and that she had offended these subordinate employees by her inquiries. The declaration that Captain Brown signed was repeatedly cited by the appellees in their discovery, in their briefing, as one of the main reasons, one of the key reasons why she was demoted, why they investigated her. It's clear on the face, in the light most favorable to the plaintiff, that that evidence does not support any sort of harassment or discriminatory act on the part of the appellant. What she did was, she worked in line with the policies that she's supposed to follow, and so are her subordinate employees. It was therefore very shocking in the deposition of Captain Brown when she testified that no one did complain to her, and that she was not aware of anyone being offended, because that's not what she signed. She then testified that the declaration had already been completely written by the fire chief, along with seven or eight other people, who were all directed to sign it. This all occurred right on the heels of appellant's protected activities. This evidence materially contests the contentions of the appellee that the demotion was based on her harassment. There's just no evidence of her being harassing, harassing anyone. The evidence is stark that she only worked in furtherance of their own EEO policies. Your Honor, I still have about a minute and 30 here. I have a question.  In the Massenburg case, the Virginia case, seems to hold that Virginia takes the position that its sovereign immunity protects the state and the counties and municipalities to the extent the municipalities are exercising governmental function. That's your understanding, right? Right, yes. Doesn't the Supreme Court in the 11th Amendment recognize the sovereign immunities that the state established for themselves has to be waived explicitly in federal court in order to be sued in federal court? For the state? Yeah. No, not for the state. For the Alder versus Justice Kennedy, he's talking about recognizing the immunities that the state as sovereign impose for themselves. Virginia says our sovereign immunity extends to the counties and to the municipalities to the extent the municipalities function in a governmental function. Right. And that immunity held by Virginia is recognized. They do not choose to be sued in federal court unless they explicitly say so. And so, what's your response to that? Massenburg's silent as to individual defendants. These individuals that were sued were not the state. These individuals that were sued were not the city of Lynchburg. They're working in a governmental function on behalf of the government. And I'm not sure that's a contest here when you're talking about fire departments. Sure. That relates to the Baca case. I just want to mention real quick related to that. Well, I'm actually out of time. You can answer. Go ahead. The Baca case, Wade, that was the most recent Fourth Circuit case that discussed the proprietary governmental functions of a firefighter. But that case was under 40.1-27.3, an entirely different law. This is the Fraud and Abuse Whistleblower Protection Act, which was written specifically for these defendants. So, thank you, Your Honor. All right. Mr. Mooney? May it please the Court. Chad Mooney on behalf of the city of Lynchburg, Fire Chief Gregory Wormser, and City Manager Winter Bindo. The reason that we're here today is because the plaintiff firefighter, Ms. Shoemate, made homophobic comments that were upsetting to some of the firefighters. What happened is that triggered an investigation, which ultimately led to her demotion. And subsequently, she brought claims against those three defendants. And if we take the first claim first, the state law claim under the Virginia Fraud and Abuse Whistleblower Protection Act, there is immunity here. Actually, at the trial court, the plaintiff admitted that the city was not a proper defendant, and therefore, shouldn't even be part of that claim. But nevertheless, the sovereign immunity does apply, that there has to be that explicit waiver that Justice Neumeier is talking about. That there has to be that explicit waiver in the statutory language. And there is relief here. Well, my question was more focused on, I think the briefing on this has been a little bit blurred, but there is a distinct recognition by federal courts of state immunity under the 11th Amendment. And we say that states can be sued in federal court if they waive their sovereign immunity. The question here is, what is the scope of the sovereign immunity? And the sovereign immunity, under Virginia law, at least as I understand it, in the Massenburg case, is an umbrella. They choose to include an umbrella that includes the counties and municipalities to the extent that people are functioning in governmental function. Now, I may be wrong on that, but... You're absolutely correct that the immunity does apply if the municipality is engaging in a governmental function. And that's not really being tested here. And that's what's kind of been left out of all of this. And what the trial court picked up on is it's really focused in and honed in... Can I ask you about that? I'm sorry to interrupt, but the statute that we're talking about doesn't seem to make a distinction between governmental functions and proprietary functions. It just says that, you know, this Whistleblower Protection Act offers relief against employees of government... Or for employees of government agencies. And it doesn't seem to matter whether or not the agency is engaged in a governmental function or a proprietary function. So it's not clear to me why Judge Moon thought that analysis was important, right? Why do you think he did that? Well, I think he did that because my understanding of sovereign immunity is that you have the 11th Amendment and you also have state common law. And my interpretation of his opinion was that he was applying state common law and... Is there anywhere in the opinion where he mentions the 11th Amendment? No. Not to my... Not that I... So how do we know what he was thinking? Well because he did the governmental... He applied the governmental analysis, governmental versus proprietary analysis, which is predicated and founded in state common law. And that aspect really hasn't been attacked in that regard that the plaintiff or the appellant is just pointing that, well, look over here, the 11th Amendment doesn't provide immunity and is not focused in on what we believe the primary issue is that this is a governmental function. I mean, there's nothing more governmental than running a fire department for the city. The courts have looked at when a municipality plans, designs, regulates, or provides a service for the common good, it performs a governmental function. And that's the whole concept for the reason behind and the policy behind sovereign immunity that we look at things like, is it protecting a public purpose, ensuring uninterrupted government  Yeah, but what does that have to do with the Whistleblower Act? I mean, Judge Moon in his opinion in footnote six says this. He references the Fraud and Abuse Whistleblower Protection Act. And he says, this is a statute that clearly purports to offer relief for employees of government agencies. And then he says, indeed, the act waives sovereign immunity in state court, full stop. Doesn't matter what we're talking about governmental function, proprietary function, it's a waiver, according to Judge Moon, of immunity, period. So what does this analysis have to do with that statute? Perhaps we don't even get, we don't even need to get to that point because if you're just looking at the explicit language of the statute, that there's only that limited waiver that the legislature has said that you can pursue, because the municipal, the default rule in our view is that sovereign immunity applies. But the legislature here waives that by allowing an aggrieved employee to file a claim in state circuit court. So by the language of the statute, that is a waiver. So the relief should have been in state court. Now, there may be some time bar issues that if they were to choose that, but. Did you understand Judge Moon to be concluding that if this were filed in state court, there'd be immunity? No, I read that to mean that. I mean, I agree that the analysis that we've been given is not clear, but it seems to me the analysis should have started with the 11th Amendment and the fact that the state sovereignty has to be recognized. And Alder versus Maine is the one that talked at length about the state common law sovereignties, immunities. And they said it's up to the state if they want to waive it in federal court. And they have to do so explicitly, but they have their own common law waivers. Now, whether this is a waiver or not in state court, it looks to me like it is a waiver and that they can sue in state court. But the statute does not say the state chooses to be or allows this suit to be filed in federal court. Correct. We believe that if to proceed in federal court, it would have to say in the statutory language that an employee can pursue a case in either circuit court or the federal district court. And without that, we think that sovereign immunity still applies. Turning to the other two causes of action under Title VII for discrimination, the issue here is that plaintiff has been unable to demonstrate how she was treated differently than someone outside of the protected class. There's really the downfall in Ms. Shumate's case was really her own deposition testimony where she's pointing to feelings. I believe. I believe that I was discriminated against. I feel that I was treated differently. But really has a problem showing that she was treated differently. There's really a lot of grievances about the gripes and grievances about just the general job. You know, we point out that she was unable to really show that. I mean, she was, there was an investigation. An investigation found that she made these homophobic comments. And I will point out that it was Ms. Shumate herself that initiated this commentary. This was brought up by her, not anyone else. So that is something that she brought it to the attention. Which, if you look at the whole record, is that she can't really point that she was treated differently. That she can't point to no males have never been demoted because of violating a policy. I'm sorry, I just want some clarification. You seem to be talking about the discrimination claim, but you're also talking about the investigation, which I understood to be part of the retaliation. Which claim are you? Well, I'm kind of talking about just historically what happened over the course of her employment that she made these homophobic comments. That ultimately led to her demotion. Which then, she does complain about a hostile work environment. But she doesn't really predicate that on being on the basis of sex or anything. The fact that she's a female. She does point to things like that she had to submit a doctor's note if she were to miss work. But actually, in the record, there is an email that shows that it wasn't just, there was other employees that were required to give a doctor's note, both men and women. That there was multiple transfers from one station to another. And those were all done, those were done at her request. That she wanted training opportunities. She wanted to be at the same station as her boyfriend. That she wasn't allowed to ask, she also pointed to the fact that she wasn't allowed to ask questions during operations minutes. That that was a rule that applied to both men and women. That no one's allowed to basically be a subordinate while your supervisor is speaking. She also points to a ballistic vest didn't fit her. That was a one size fits all. And actually went to lengths to try to make sure that it fit properly. And even in her own deposition, she admits that there was no discrimination as a result of how the vest fit. She then also points to a helmet and a face mask that did not fit. But Captain Milner helped her find a helmet that had a proper face mask that would fit. And the female fire department captain made efforts to accommodate the fit and tested both. So the fire department is really trying to make sure that she's getting everything that she wants. Anything that she's complained of, they were taking care of it. Well, the focus of their appeal on, I guess, the Title VII piece, it seems to be more so on the retaliation. And that they had produced evidence of that the legitimate reason proffered by the employer was pretext for retaliation. Yes. So once the employer, the city, provides that legitimate non-discriminatory basis, then the burden then shifts back to appellant. So that was a lie. That was false. She did not do that. So and I think a little bit of the history here helps shed light on that, is that there is a lot of complaints about Captain Brown. Captain Brown simply reported the homophobic comments that were made. The summary judgment, the investigation was what led to the demotion. It was not Captain Brown's comments. So it's almost a red herring that it doesn't matter what Captain Brown said, because independent and a separate basis was the investigation itself. We need to focus on the investigation. And because the investigation resulted in a finding that those were founded, and Judge Moon pointed out that it was really Chris Maeve's testimony that said, yes, I was offended. I was, I was, I was offended. I was harmed by that. I was upset by that. Me and another firefighter were both upset about that. And that is the legitimate basis. And the courts have said, it's not whether the decision was correct. It's about the honesty of the decision, that the city believes that there was a legitimate basis. And that is what's really instructive in this case, is we can't focus on something that really didn't matter for her demotion. We have to look at the, at the, an outside investigator, a former retired Virginia State Police investigator, investigated, conducted 14 different interviews, took two interviews of the appellant herself. At no point did the appellant claim that this was a sham investigation, didn't complain about the thoroughness of the investigation. So there was that, that necessary predicate foundation for there to be a legitimate, just non-discriminatory basis. The appellant is pointing to something that does not matter at all. It has no relation to, even, even if, let's, let's take for example that Miss Captain, Miss Brown did lie or did fabricate or embellish. It doesn't matter because the independent investigation found that the appellant made those comments. That's, that's, that's the basis that gives the, the city the right to demote her. And she hasn't been able to offer any evidence that, that, that was a lie. And so because once the burden shifts back to her, she can't establish that. So that's the reason, that's the basis for Judge Moon's ruling, that the retaliation claim does not survive. I would be remiss if I didn't point out one more thing. That once Miss Shoemate was demoted, that there was an opportunity for her to pursue the grievance procedures with the city of Lynchburg. And she did not, she did not pursue those, those, that procedure or any remedies therein. I think that's really telling of what happened here and that her, her demotion was, was legitimate and non-discriminatory, unless the court has any further questions. Thank you very much. We would ask that the court uphold the decision and affirm the decision of the trial court. Thank you. Mr. Strelka? Yes, thank you, Your Honor. Can I ask you a question about, just before you sat down? I'm looking at the district court's order here. And the district court said, the court's holding merely acknowledges that the act does not waive sovereign immunity in federal court. The Supreme Court has routinely held that a state's consent to sue in its own courts is not a waiver of its immunity from suit in federal court. And it has two citations. So as Virginia has not clearly consented to lawsuits in federal court, federal court is an improper venue for claims under Virginia's Fraud and Abuse Whistleblower Protection Act. That's an 11th Amendment decision. You said they, the court didn't address the 11th Amendment. I, Judge Diaz said the court didn't address the 11th Amendment decision. I said that we, that the 11th Amendment should not apply. Yeah, you said it because you, you shrink the sovereign immunity claimed by Virginia, but Virginia defines its sovereign immunity very clearly in Massenburg.  Your Honor, those, but as Appellant would argue that this case is against individual defendants, and they're not against state defendants, it's not against the Commonwealth of Virginia. The law says it shall be the policy of the Commonwealth that employees of governmental agencies be freely able to report wrongdoing. I'll, I'll, I want to address a couple of things that my colleague across the aisle said. Yes. A suit against a, a, a mayor of a town in its official capacity, for instance. It's not in the official capacity. These were in the individual capacity suits. But he's, he's getting money damages, right? Right. But these, Your Honor, I'm the largest filer of the Fraud and Abuse Whistleblower Protection Act lawsuits in the state of Virginia. I filed more than any other lawyer. I know. And what I can tell you. You've been successful in Virginia. Virginia waived it, clearly. Right, right. You can file those suits. But the question is, have you filed any in federal court? This one? Fair enough. Yeah, yeah. The, Your Honor, this case was against individual defendants. All of the other cases that I filed under this law are against individual defendants. The, there was a defendant in the city of Lynchburg. The state has, all the circuit courts of the state have been wildly varied as to the application of who is the proper defendant in a Fraud and Abuse Whistleblower Protection Act. It differs from Roanoke County to Roanoke City to Danville. All of southwest Virginia, there's difference of opinions about whether the municipality stays in, whether they don't. But what everyone has made clear is that the individual defendants always stay in. So in the course of pleading, what we have done, what I always do, is because, again, there's no precedent on the, from the Supreme Court of Virginia or the Court of Appeals on this, we have typically listed the municipality as one of the defendants, and we list the individuals because they follow the definition of the word employer under the law. And what I said in court, what my colleague just said when he was arguing, was that we recognize that the city of Lynchburg was an improper defendant. What I stated in court was that the city of Lynchburg does not fulfill the definition of employer under the Fraud and Abuse Whistleblower Protection Act, and that the individual defendants do. A couple other things that my colleague across the aisle said that I wanted to clear up. He mentioned several times, he used the words homophobic comments. There's no homophobic comment in the record. Because you question, if I were to, if a supervisor were to question someone in a place of employment and say, hey, I'm concerned that you might feel differently about this coworker because of his race. Is that true? But you know, whether it's homophobic or not, it was a caution to the person to consider not speaking out loud about your gayness, because some people will not accept it. And you have to be prepared for those consequences. Whether that's homophobic or not, the employer concluded it was homophobic, and it treated it was against public policy, and treated her as being out of bounds in making that kind of statement to an employee. In that sense, he was giving it a characterization. But it does address homophobic means fear of gayness. It seems to me she was addressing that. She was suggesting that some people here are homophobic, be careful what you say.  But what my colleague was arguing was that she herself made homophobic comments. That's what he argued. Well, she did make that comment. No, she didn't, Your Honor. She made that comment to him, cautioning him and going along to express the consequences of it. But saying someone makes a homophobic comment is the same thing as saying you're making a homophobic slur. If you're, if you are, she never engaged in that. My metaphor of the issue, the way he expressed it to us, but the question he was commenting that she made this statement in the workplace, which her employer took to be inappropriate. With no evidence of any inappropriateness. Because what she did mirrors their actual EEO policy. She identified his gayness and focused on his gayness and gave him a warning based on his gayness. It was another employee. It was an employee. And she was concerned about these other employees treating him and how they were reacting to him. But she volunteered it, right? She's a supervisor. She has a duty to follow these policies, Your Honor. She observed he's gay and said, because you're gay, basically. She didn't say because, but she says, you're gay and you have to be aware that you shouldn't be out with it, come out of the closet, so to speak, because there are people here who won't accept it. Well, respectfully, Your Honor, the evidence, she didn't, the evidence does not specifically curtail that she discussed it in those terms. The evidence is that she only ever acted as a good faith supervisor with a concern that there may be a violation of an EEO policy at the heart of this case. And they're free to say, oh, well, she harassed us. But when you, in a court, and when you go through discovery and you look through the evidence of what she did that may actually be some sort of harassment or discriminatory, there's nothing. She only ever acted in furtherance, again, of an EEO policy. The metaphor earlier was if she had concerns about race and she had mentioned to these other employees, this other employee is of a different race, does that bother you? And would Lynchburg say that that's harassment on race because she asked that question? Of course not. She's acting in furtherance of an EEO policy. What the defendant did do was they relied on Captain Brown's declaration repeatedly, over and over and over and over again. And it was false and fraud. And she testified that she never received a complaint and she didn't hear that anybody was offended. Before you sit down, Mr. Strelka, you mentioned that you filed a number of these whistleblower Protection Act cases across the Commonwealth. And so my question to you is, and you said that you had never filed one in federal court before this one. So when you filed this case in federal court, did you contemplate that there might be an Eleventh Amendment issue that might rear its head? And if so, I mean, what? I had recently engaged in a similar case on a different law in which the Baca decision came out. And it was a firefighter case. And so I had all of that in mind. And given that this was the Fraud and Abuse Whistleblower Protection Act, I didn't believe that there was a proprietary governmental analysis that needed to take place, that this is a law that was specifically written in the Commonwealth by the General Assembly for employees of municipalities. And that's what it was used for. And that supplemental jurisdiction would get us into federal court. But no, not at the time, Your Honor, we still don't believe it. Because this law was, this case was properly filed and the court should not have dismissed it on sovereign immunity grounds or Eleventh Amendment grounds or any of those grounds. It's clear that she contested and reported wrongdoing, which is the gambit of the statute, and she was retaliated for it. I'm pleased to answer any other questions you have. And I want to thank you all for your very energized time today. It's clear that you all consider this case important and I appreciate that. So thank you. All right. Thank you, counsel. All right. Well, I appreciate the arguments. Both counsel will come down and greet you and move on to our final case.
judges: Albert Diaz, Paul V. Niemeyer, Matthew James Maddox